## CIRCUIT COURT OF THE CITY OF RICHMOND

Antonio Buck

    v.

The Hon. Ralph Robertson, Judge,
and the General District Court
of the City of Richmond

July 11, 1996

Case No. LB-1705

By Judge Donald W. Lemons

On June 7, 1996, Antonio Buck, by his counsel, Craig S. Cooley, and the Commonwealth and The Honorable Ralph Robertson, by their counsel, Assistant Commonwealth's Attorney, Collette McEachin, came before the Court on an appeal of decisions rendered by the General District Court of the City of Richmond and upon a Petition for Writ of Prohibition. The Court permitted Mr. Buck's counsel to orally move the Court for a Writ of Prohibition upon condition that a written Petition be subsequently filed. After service of the Petition upon The Honorable Ralph B. Robertson, Judge of the General District Court of the City of Richmond, the Office of the Attorney General entered an appearance on behalf of Judge Robertson and filed responsive pleadings styled as "Antonio Buck v. Richmond General District Court." The responsive pleadings requested submission of the case based upon evidence previously taken at the hearing on June 7, 1996.

The Court finds that Antoine Buck is the defendant in the following matters pending before the General District Court:

Warrant for Trespass — 96003480
Warrant for Assault and Battery — 96004330
Warrant for Assault and Battery — 96004329

Warrant for Trespass — 96004328
Warrant for Brandishing a Firearm — 96004381
Warrant for Assault and Battery — 96004382

The defendant moved the Richmond General District Court to transfer these matters to the Richmond Juvenile and Domestic Relations Court, and in support of the motion, the defendant contends that the district court has no jurisdiction to hear these cases. The district court ruled that it had jurisdiction to try these cases and delayed further proceedings to allow the defendant to appeal the court's ruling to the circuit court.

This Court has no jurisdiction to hear an appeal of the district court's decision to retain these matters on its docket. Section 16.1-132 of the Code provides that:

> Any person *convicted* in a district court of an offense not felonious shall have the right, at any time within ten days from such conviction, and whether or not such conviction was upon a plea of guilty, to appeal to the Circuit Court. There shall also be an appeal of right from any order or judgment of a district court forfeiting any recognizance or revoking any suspension of sentence.

(Emphasis added.)

There being no conviction of the defendant and no other statutory provision of the Code authorizing an appeal, this Court is without jurisdiction to hear this appeal.

Upon informing the defendant and the Assistant Commonwealth's Attorney that the Court lacked jurisdiction to hear an appeal of this matter, counsel for the defendant made an oral motion for a Writ of Prohibition and evidence was heard. Subsequently, the defendant filed a written Petition for a Writ of Prohibition.

The matter is now before the Court upon a Petition for a Writ of Prohibition and appropriate responsive pleadings. The parties have agreed to adopt the evidence presented on June 7, 1996.

The Court finds that:

(1) Antonio Buck and Annette Y. Morris have resided together at 415 Calhoun Street in the City of Richmond from October, 1995 until April 16, 1996, when petitioner was incarcerated. During that period the petitioner was away from the home no more than five to six nights per month.

(2) Antonio Buck kept his clothing at the residence.

(3) During this period, Antonio Buck and Annette Y. Morris regularly engaged in sexual relations.

(4) Antonio Buck and Annette Y. Morris had a child born alive on February 9, 1996; however, the child died several hours after birth. Antonio Buck was listed as the father of the child on the birth and death certificates.

(5) Antonio Buck shared expenses and child rearing responsibilities for Annette Y. Morris' other four children in the household.

(6) Antonio Buck and Annette Y. Morris share their religious faith together.

(7) Annette Y. Morris has continued to visit Antonio Buck at the Richmond City Jail and to call him on the telephone since April 16, 1996.

(8) Antonio Buck regularly ate meals together with Annette Y. Morris and her four children and established a relationship that was similar to a marital relationship.

(9) The matters in question pending before the General District Court all involve allegations wherein Antonio Buck is the defendant and Annette Y. Morris is the complaining party or victim.

Section 16.1-241(J) provides jurisdiction in the Juvenile and Domestic Relations Court for:

> J. All offenses in which one family or household member is charged with an offense in which another family or household member is the victim and all offenses under § 18.2-49.1 . . . . For purposes of this subsection, "family or household member," as defined in § 16.1-228, shall also be construed to include parent and child, stepparent and stepchild, brothers and sisters, and grandparent and grandchild, regardless of whether such persons reside in the same home.

Section 16.1-228 provides in part as follows:

> "Family or household member" means (i) the person's spouse, whether or not he or she resides in the same home with the person, (ii) the person's former spouse, whether or not he or she resides in the same home with the person, (iii) the person's parents, stepparents, children, stepchildren, brothers, sisters, grandparents and grandchildren who reside in the same home with the person, (iv) the person's mother-in-law, father-in-law, sons-in-law, daughters-in-law, brothers-in-law and sisters-in-law who reside in the same home with the person, (v) any individual

who has a child in common with the person, whether or not the person and that individual have been married or have resided together at any time, or (vi) any individual who cohabits or who, within the previous twelve months, cohabited with the person, and any children of either of them then residing in the same home with the person.

In the case of *Colley v. Colley*, 204 Va. 225 (1963), the Virginia Supreme Court considered the definition of "cohabit" in the context of venue for divorce suits. The Court said:

With respect however to § 20-98 of the Code prescribing the venue of divorce suits, the word "cohabit" should be given "its literal meaning of having dwelled together under the same roof with more or less permanency" . . . .

*Id.* at 228.

In the case of *Schweider v. Schweider*, 243 Va. 245 (1992), the Virginia Supreme Court reconfirmed its understanding that ordinarily the term "cohabit" means something more than an isolated act.

We have said that the term "cohabit" means "to live together in the same house as married persons live together, or in the manner of husband and wife." *Johnson v. Commonwealth*, 152 Va. 965, 970, 146 S.E. 289, 291 (1929). While engaging in sexual relations is a factor in determining cohabitation, " 'matrimonial cohabitation' consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship." *Petachenko v. Petachenko*, 232 Va. 296, 299, 350 S.E. 2d 600, 602 (1986); see *Colley v. Colley*, 204 Va. 225, 228-29, 129 S.E. 2d 630, 632 (1963).

*Id.* at 248.

Finally in the case of *Johnson v. Commonwealth*, 152 Va. 965 (1929), a prosecution for lewd and lascivious cohabitation, the Supreme Court stated:

Section 4545 provides the penalty for lewd and lascivious cohabitation. When read as a whole, it seems clear that there can be no conviction under this section except where the parties charged lewdly and lasciviously cohabit together; and by cohab-

iting the statute means dwelling together; cohabiting together in the same manner that a man and his wife cohabit together.

*Id.* at 969-970. The Court notes that in ordinary usage and general understanding the verb "cohabit" means to live or dwell together as husband and wife. Webster's New International Dictionary, 2d ed., p. 520; Black's Law Dictionary, 3d ed., p. 347.

Reference to § 16.1-227, the purpose and intent section of the Juvenile and Domestic Relations Code, clearly reveals its objective to preserve family relationships and protect the welfare of children. Sections 16.1-228 and 16.1-241(J) clearly evince the legislature's desire to extend the Juvenile and Domestic Relations Court's original exclusive jurisdiction over such relationships even when they are not officially sanctioned and lawfully recognized as formal marriages.

The evidence in this matter clearly establishes the exclusive original jurisdiction of the Juvenile and Domestic Relations District Court over the six misdemeanor warrants in question. Antonio Buck, the defendant in each of these cases, and Annette Y. Morris, the complainant or victim in each of these cases, are "family or household members" as defined under Virginia Code §§ 16.1-241(J) and 16.1-228. Additionally, the Court notes that another arrest warrant naming Antonio Buck as a defendant with Annette Y. Morris as the victim is pending in the Richmond Juvenile and Domestic Relations Court.

A Writ of Prohibition shall issue to The Honorable Ralph B. Robertson and the General District Court of the City of Richmond prohibiting any further proceedings in these matters.