GREGORY C. PETACHENKO

V.

MARY F. PETACHENKO

Record No. 831124

November 26, 1986

Present: All the Justices

*G. Wilson Nelligar (R. Wayne Nunnally; Nunnally, Lumpkin & Nelligar, P.C.*, on brief), for appellant.

*Melvin J. Radin (Ermlich & Radin*, P.C., on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, we determine whether an act of sexual intercourse between husband and wife during the pendency of their divorce case requires that a suit for divorce on the ground of desertion be dismissed.

On September 27, 1978, Mary F. Petachenko filed a bill of complaint in the trial court seeking a divorce from her husband, Gregory C. Petachenko, on the grounds of constructive and actual desertion. Gregory filed an answer and cross-bill seeking a divorce on the ground of desertion. The trial court ordered Gregory to pay to Mary specified attorney's fees and costs and spousal support of $250 per month *pendente lite.*

The matter was referred to a commissioner in chancery, who heard the testimony of witnesses in September and November 1981. The evidence established that the parties were married on August 31, 1963, and that no children were born of the marriage. Mary moved from the marital home into an apartment, under a one-year lease, about August 31, 1978, but the parties attended marriage counseling sessions from time to time until the spring or summer of 1980. Mary testified, and Gregory denied, that she cooked for him in his home 20 to 25 times between September 1978 and August 1980. Mary testified, and Gregory conceded,

that in June or July 1980 she spent a night in his home and they engaged in sexual intercourse. Mary testified, and Gregory denied, that they had also had intercourse in his home once in May 1979. Mary conceded that she had not been in Gregory's house since August 1980.

At the conclusion of the evidence, Mary moved to amend her bill to allege voluntary separation for 12 months in lieu of desertion. The commissioner took the motion under advisement.

In September 1982, the commissioner filed his report finding that Mary had deserted Gregory on September 2, 1978, without justification, and that they had not cohabited since that time. The commissioner recommended that Mary's bill be dismissed, that Gregory be granted a divorce, and that no spousal support be awarded. Mary filed exceptions to the commissioner's report.

By final decree entered April 15, 1983, the trial court stated that it appeared that the parties had "copulated during the pendency of these proceedings [thereby] destroying the jurisdiction" of the court to continue with the case. The court therefore dismissed Mary's bill of complaint and Gregory's cross-bill and ordered Gregory to continue payment of spousal support in the sum of $250 per month pending further order of the court.

There is ample evidence in the record to support the commissioner's finding that Mary deserted Gregory on September 2, 1978, without justification. It is apparent that the commissioner believed the testimony of Gregory relating to the facts in dispute and that the trial court dismissed the cause only on a conclusion of law. Accordingly, we will accept the facts as established by Gregory. The only question, therefore, is whether, because the parties engaged in a single act of sexual intercourse in 1980, the commissioner's finding that they had not cohabited after September 2, 1978, is contrary to the evidence.

Code § 20-95 provides that a divorce from bed and board may be decreed for "willful desertion or abandonment." Code § 20-91(6) provides for a divorce from the bond of matrimony on the same ground after a period of one year from the date of the desertion or abandonment. Under § 20-95, unlike § 20-91(6), no specific period is prescribed during which the desertion must continue to entitle a party to a divorce from bed and board. *Bailey* v. *Bailey*, 62 Va. (21 Gratt.) 43, 47 (1871).

In the context of both these provisions, desertion is a breach of matrimonial duty — an actual breaking off of the mat-

rimonial cohabitation coupled with an intent to desert in the mind of the deserting party. *Breschel* v. *Breschel*, 221 Va. 208, 211, 269 S.E.2d 363, 365 (1980) (§ 20-91(6)); *Smith* v. *Smith*, 202 Va. 104, 109, 116 S.E.2d 110, 113 (1960) (§ 20-95); *Latham* v. *Latham*, 71 Va. (30 Gratt.) 307, 322 (1878) (predecessor to § 20-91(6)); *Bailey*, 62 Va. (21 Gratt.) at 47 (predecessor to § 20-95). Once separation and intent to desert have been established, the desertion is presumed to continue until the contrary is shown. *Bailey*, 62 Va. (21 Gratt.) at 47.

■ The "matrimonial cohabitation" consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship. *See Colley* v. *Colley*, 204 Va. 225, 228-29, 129 S.E.2d 630, 632 (1963). A mere denial of sexual intercourse, where other marital duties are performed, does not constitute desertion. *Goodwyn* v. *Goodwyn*, 222 Va. 53, 55, 278 S.E.2d 813, 814 (1981); *Hoback* v. *Hoback*, 208 Va. 432, 436-37, 158 S.E.2d 113, 117 (1967); *Albert* v. *Albert*, 137 Va. 1, 3-4, 119 S.E. 61, 61 (1923);* *cf. Chandler* v. *Chandler*, 132 Va. 418, 430-31, 112 S.E. 856, 860-61 (1922); *Ringgold* v. *Ringgold*, 128 Va. 485, 495-96, 104 S.E. 836, 840 (1920). Conversely, in order to end a desertion, the parties must resume the matrimonial cohabitation with the intent to end the desertion. Not only is resumption of sexual relations a factor, the parties also must resume the performance of marital duties while living together on a continuous basis.

■ No resumption of marital cohabitation has been shown in this case. Gregory was unequivocal in his testimony that no reconciliation was intended or effected by the parties' sexual intercourse in 1980. Even Mary, while testifying about events that Gregory denied and about her hope that they would become reconciled, acknowledged that she and Gregory "did not live together under the same roof."

Citing *Roberts* v. *Pace*, 193 Va. 156, 67 S.E.2d 844 (1951), Mary concedes that a single act of sexual intercourse does not

---

* *Albert* v. *Albert*, we referred to the wife's refusal to have sexual intercourse as a refusal "to cohabit" with her husband. 137 Va. 1, 2-3, 119 S.E. 61, 61 (1923). Despite this inexact use of the word "cohabit," the result in *Albert* is in accord with our other decisions cited above. We held that the willful withdrawal from sexual intercourse, when accompanied by willful breach and neglect of other marital duties, is considered a general withdrawal from the duties of the marital relationship and, if without just cause or excuse, constitutes desertion. *Id.* at 3-4, 119 S.E. at 61.

constitute a reconciliation. Nevertheless, she contends that under *Tarr* v. *Tarr*, 184 Va. 443, 35 S.E.2d 401 (1945), Gregory condoned her desertion by engaging in sexual intercourse with her. We disagree.

In *Tarr*, we construed the predecessor to Code § 20-94, which provides that a divorce based on adultery shall not be granted "if it appear that the parties voluntarily cohabited after the knowledge of the fact of adultery." *Id.* at 447, 35 S.E.2d at 403. Construing the phrase "voluntarily cohabited" in the limited context of this statute, we held that it "should not be restricted to its literal meaning of having dwelled together under the same roof with more or less permanency." *Id.* at 448, 35 S.E.2d at 404. We relied on the general rule that a single voluntary act of sexual intercourse by an innocent spouse condones a known offense of adultery. *Id.*, 35 S.E.2d at 403. We believe this construction of "voluntarily cohabited" is properly limited to its use in Code § 20-94.

Citing *Anderson* v. *Anderson*, 196 Va. 26, 82 S.E.2d 562 (1954), Mary also argues that the parties' sexual activity destroyed the continuity of their separation and required dismissal of Gregory's cross-bill. Again, we do not agree.

In *Anderson*, the wife was awarded a divorce from bed and board based on her husband's desertion. Later, the court granted the husband's request to have this decree merged into a decree of divorce from the bond of matrimony. *Id.* at 27, 82 S.E.2d at 564. We reversed, finding that the conduct of the parties precluded such merger under Code § 20-121, which requires that the parties remain "separated without interruption" from the time of entry of the decree of divorce from bed and board. *Id.* at 30-31, 82 S.E.2d at 565-66.

Following entry of the first decree, the husband, who lived and worked in a distant county, visited the wife at her parents' home almost every weekend for six months. During these visits, they shared a bedroom, and the husband admitted they had sexual relations on several occasions. The wife "discharged all of her marital duties as a wife, including such menial tasks as washing his clothes and preparing his meals," and the parties discussed plans to build a house in the county in which the husband worked. *Id.* at 28, 82 S.E.2d at 564.

The facts in *Anderson* failed to show, as required by the merger statute, that a reconciliation had not taken place and that the sep-

aration had continued without interruption since entry of the first decree. *Id.* at 30-31, 82 S.E.2d at 565-66. Indeed, the evidence tended to show a resumption of matrimonial cohabitation, as the parties resumed both sexual relations and other marital duties while living together over an extended period of time.

■ Certain language in *Anderson* equates the continuous and uninterrupted separation referred to in the merger statute, Code § 20-121, to that required to be proved as an element of desertion as a ground for an absolute divorce. *Id.* at 29, 82 S.E.2d at 565. To the extent this language may be construed to hold that an act of sexual intercourse between the parties automatically terminates their separation, it is expressly overruled.

■ We hold that the trial court erred in dismissing Gregory's cross-bill because of a single act of sexual intercourse between the parties that occurred during the pendency of the case. Indeed, the jurisdiction of a trial court to adjudicate a divorce proceeding is not destroyed by conduct of the parties that might require dismissal of the bill or cross-bill. Rather, jurisdiction remains in the court to grant or refuse the requested relief in view of the facts as shown by the evidence. And in this case, we hold that the evidence does not show a break in the separation of the parties with intent to end the desertion. Accordingly, we will reverse the decree of the trial court and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*